IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. Nos. 94-53, 94-54, 94-236 PJM |
| | * | Civ. Nos. 16-1974, 16-1976, 16-1977 PJM |
| MALIK NERO, | * | |
| | * | **UNDER SEAL** |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

On December 16, 1994, Malik Nero was sentenced to 322 total months of imprisonment

and three years of supervised release for his conviction on multiple counts, including robbery of

postal employees, bank robbery, obstruction of interstate commerce, and use of a firearm during

and in relation to a crime of violence. On June 8, 2016, Nero filed a motion to vacate his conviction

under 18 U.S.C. § 924(c) for use of a firearm during and in relation to a crime of violence. In the

intervening time before his motion became ripe, Nero completed his terms of imprisonment and

supervised release. The Court now decides its jurisdiction over his motion to vacate and addresses

the merits of the motion. Although it finds that Nero still has standing to pursue the motion, the

Court will **DENY** the requested relief on the merits.

**I.**

On September 16, 1994, Nero pleaded guilty (1) in case number 94-cr-53-PJM to three

counts of armed robbery of postal employees, 18 U.S.C. § 2114; (2) in case number 94-cr-54-PJM

to one count of armed robbery of a postal employee, 18 U.S.C. § 2114, and one count of using a

firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c); and (3) in case number

94-cr-236-PJM to one count of armed bank robbery, 18 U.S.C. § 2113(d), and one count of

obstructing interstate commerce, 18 U.S.C. § 1951. On December 16, 1994, the Court sentenced

Nero to 262 months as to each count except the section 924(c) count, to run concurrently, and to a

consecutive sentence of 60 months on the section 924(c) count, followed by a three-year term of supervised release. On December 20, 1994, Nero filed a notice of appeal of the district court's judgment, and on September 15, 1995, the Fourth Circuit affirmed his sentence. *See United States v. Nero*, 66 F.3d 317 (4th Cir. 1995) (mem.).

On June 8, 2016, while still incarcerated, Nero filed the present motion to vacate under 28 U.S.C. § 2255, challenging his section 924(c) conviction (count two) in case number 94-cr-54-PJM, which was based on the predicate offense of armed robbery of postal employees in violation of 18 U.S.C. § 2114. The motion was thereafter stayed pending resolution of relevant litigation in the Supreme Court. On May 30, 2020, Nero filed a supplemental motion to vacate, to which the Government filed an opposition on November 2, 2020, and Nero replied on November 8, 2020.

He was released from prison on May 5, 2017, and completed his three-year term of supervised release on September 18, 2019, during the pendency of his motion to vacate. On February 2, 2021, the Court issued a memorandum order noting that he was no longer in custody and directing the parties to file brief supplements addressing whether the motion to vacate is moot. The parties having done so, the Court will first address mootness and then the merits of the motion.

**II.**

Because federal "judicial power depends upon the existence of a case or controversy," "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (quoting *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3 (1964)). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate," such that "[t]he parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990)). To avoid mootness and

maintain standing on a motion challenging a conviction, a federal defendant whose sentence has expired must demonstrate "some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction." *Id.* That said, the courts generally presume such consequences, which can include, for example, difficulty obtaining certain occupations or a threat of deportation. *See, e.g.*, *Carafas v. LaVallee*, 391 U.S. 234, 237–38 & n.8 (1968).

Although his incarceration and supervision have ended, Nero relies on three principal cases to argue that he suffers ongoing collateral consequences sufficient to show continued standing to pursue his motion. In *Broughton v. North Carolina*, the Fourth Circuit recognized that "unconditional release from . . . custody will not always moot a claim for habeas relief, for the collateral consequences of a criminal conviction may create 'a substantial stake in the . . . conviction which survives satisfaction of the sentence.'" 717 F.2d 147, 148 (4th Cir. 1983) (quoting *Carafas*, 391 U.S. at 237). Moreover, the court acknowledged, "where the criminal conviction may result in an enhanced sentence should the petitioner later be convicted of another crime, her stake in habeas relief permits the court to exercise its judicial function long after she has been freed." *Id.* at 149.

The Fourth Circuit reaffirmed this conclusion more recently in *United States v. Adams*, which considered a motion to vacate the defendant's conviction under 18 U.S.C. § 922(g), even though vacating that conviction would not result in a diminished sentence of incarceration. 814 F.3d 178 (4th Cir. 2016). The court observed that "[f]elony convictions carry a myriad of collateral consequences above and beyond time in prison, including the possibility that a future sentence will be enhanced based on the challenged conviction, the possibility of using the conviction for future impeachment, and societal stigma." *Id.* at 181 n.1 (citing *Guam v. Torre*, 68 F.3d 1177, 1180 (9th

Cir. 1995) ("The law is plain that multiple convictions, apart from concurrent sentences, carry adverse collateral consequences that may not be ignored." (quotation marks omitted)).

Nero submits that these Fourth Circuit precedents are consistent with the Supreme Court's ruling in *Evitts v. Lucey*, where the Court affirmed the lower court's ruling in favor of a defendant challenging the dismissal of his appeal of the original judgment and conviction. 469 U.S. 387 (1985). The Court noted that the defendant had been "released from custody and his civil rights . . . restored" during the pendency of the case, but it concluded that the case was "not moot" because "some collateral consequences of his conviction remain[ed], including the possibility that the conviction would be used to impeach testimony he might give in a future proceeding and the possibility that it would be used to subject him to persistent felony offender prosecution if he should go to trial on any other felony charges in the future." *Id.* at 391 n.4.

Nero argues that these precedents directly support his contention that he continues to face collateral consequences as a result of the challenged conviction. Specifically, his current section 924(c) conviction exposes him to a mandatory consecutive sentence of 25 years of imprisonment if he were to commit a future section 924(c) offense, as well as an increase in criminal history points and, potentially, in his overall sentence if he were to convict any federal offense in the future. *See, e.g.*, *Brooks v. N.C. Dep't of Correction*, 984 F. Supp. 940, 947 (E.D.N.C. 1997) (finding, under Fourth Circuit law, federal habeas petition not moot despite completion of probationary term because defendant "faces the possibility, however slim, that a sentence for a subsequent misdemeanor conviction in North Carolina could be enhanced because of [the challenged] conviction").

The Government, for its part, submits that Nero's motion to vacate should be dismissed as moot. It does not address any of the cases on which Nero relies but instead highlights inapposite

language in *Spencer v. Kemna*, where the Supreme Court held that a defendant does not enjoy a presumption of collateral consequences when challenging a revocation of his parole. *See* 523 U.S. at 12. The Government emphasizes that, according to *Spencer*, a defendant who is incarcerated or on supervised release "always" has standing to challenge his conviction, but once a defendant's "sentence has expired, . . . some concrete and continuing injury other than the now-ended incarceration or parole . . . must exist if the suit is to be maintained." *Id.* at 7.

Viewed in this narrow light, *Spencer* may appear to provide guidance that conflicts somewhat with *Evitts* on the question of mootness in circumstances such as the present case. However, the Government obscures relevant language in the same opinion that counsels against mootness here. *Spencer* acknowledged that the Supreme Court "ha[s] been willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur)." 523 U.S. at 8. The Court did not apply this presumption of collateral consequences in *Spencer* explicitly because the defendant before it "d[id] not attack his convictions for felony stealing and burglary" but "assert[ed] only the wrongful termination of his parole status." *Id.*

Here, Nero is not challenging a termination of parole status; he is challenging an underlying count of conviction. *Evitts* and *Adams*—and, indeed, even *Spencer*—plainly dictate that Nero's motion is not moot. He continues to face collateral consequences as a result of his challenged section 924(c) conviction—namely, "the possibility that a future sentence will be enhanced based on the challenged conviction." *Adams*, 814 F.3d at 181 n.1. The Court is satisfied that he has standing to pursue his motion to vacate notwithstanding completion of his term of supervised release, and the motion is therefore not moot.

**III.**

Nero then challenges his section 924(c) conviction on the merits, arguing that 18 U.S.C. § 2255(a) "authorizes relief when a sentence was imposed in violation of the laws of the United States." *Mack v. United States*, 127 F. Supp. 3d 502, 505 (D. Md. 2015) (quoting *United States v. Bailey*, 777 F.3d 904, 907 (7th Cir. 2015)).

Section 924(c) prohibits the use of a firearm "during and in relation to a[] crime of violence." 18 U.S.C. § 924(c)(1)(A). The statute defines a "crime of violence" in two ways. The first, known as the force clause, defines it as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* § 924(c)(3)(A). The second, known as the residual clause, defines a "crime of violence" as a felony that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3)(B). In *United States v. Davis*, the Supreme Court held that the residual clause definition was unconstitutionally vague. *See* 139 S. Ct. 2319, 2336 (2019). Thus, a conviction under section 924(c) can only be sustained if the predicate offense qualifies as a crime of violence according to the definition in the force clause.

To determine whether the force clause applies to the predicate offense underlying a section 924(c) conviction, courts take a categorical approach based on the elements of "the law that applied at the time of that conviction." *McNeill v. United States*, 563 U.S. 816, 820 (2011). The court must determine whether the offense has a statutory element that requires the use, attempted use, or threatened use of violent physical force—i.e., "a substantial degree of force" that is "capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010); *see Descamps v. United States*, 570 U.S. 254, 260–61 (2013). Under this approach, without

regard to the facts of the case, a predicate offense is not a crime of violence if the most innocent

conduct proscribed by the predicate statute can be accomplished without the use of violence. *See*

*United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012).

In a "narrow range of cases" where a statute is "divisible," sentencing courts may apply a

"modified categorical approach." *Descamps*, 570 U.S. at 261–62. This occurs where the statute

"comprises multiple, alternative versions of the crime"—in other words, defines multiple crimes—

such that "a later sentencing court cannot tell, without reviewing something more, if the

defendant's conviction was for" one or the other alternative. *Id.* at 262; *see Mathis v. United States*,

136 S. Ct. 2243, 2249 (2016). Courts distinguish statutes that set forth separate elements from

those that set forth merely different means of commission of the crime based on whether the

"things must be charged (and so are elements)"—for example, where the alternatives carry

different punishments—or whether they "need not be [charged] (and so are means)." *Mathis*, 136

S. Ct. at 2256. "If a court determines that the underlying statute is divisible, and that application

of the modified categorical approach is therefore appropriate, then it may examine a limited set of

documents," such as indictments and jury instructions, to determine "which of the statute's

alternative elements formed the basis of the defendant's prior conviction." *United States v. Bryant*,

949 F.3d 168, 173 (4th Cir. 2020) (quoting *Descamps*, 570 U.S. at 262)).

## IV.

The predicate offense underlying Nero's section 924(c) conviction is postal robbery during

which a victim's life was threatened by use of a dangerous weapon, in violation of 18 U.S.C.

§ 2114(a). At the time of his conviction, the statute provided the following:

> Whoever assaults any person having lawful charge, control, or custody of
> any mail matter or of any money or other property of the United States, with
> intent to rob, steal, or purloin such mail matter, money, or other property of
> the United States, or robs any such person of mail matter, or of any money,

> or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; *and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned not more than twenty-five years.*

18 U.S.C. § 2114(a) (1990–1994) (emphasis added).

Under the categorical approach, a predicate offense under this statutory provision would fail to satisfy the force clause of section 924(c), because the most innocent conduct proscribed thereby can be accomplished without violence. However, if the statute is divisible and the Court applies the modified categorical approach, then the predicate offense in this case, postal robbery during which a victim's life was threatened, would constitute a crime of violence under the force clause of section 924(c). The controlling question is whether the two parts of this statutory provision contained different "elements" that "must be charged" or described different "means" that need not be charged. *Mathis*, 136 S. Ct. at 2256.

The Government argues that the Court should read this statute to be divisible, which appears to be consistent with current case law. The Fourth Circuit recently explained in *United States v. Bryant* that section 2114(a) "is divisible into at least two parts: a basic version of the crime in the first clause (before the semicolon) and an aggravated version of the crime with an enhanced maximum penalty in the second clause (after the semicolon)." 949 F.3d at 174. The court therefore applied the modified categorical approach and, looking to the latter provision, held that the aggravated version of the offense proscribed by the statute was categorically a crime of violence. *Id.* at 181. The Government argues that the Court should apply *Bryant*'s holding to this case and conclude that the predicate offense, postal robbery during which a victim's life was threatened, was a crime of violence under the force clause of section 924(c). The Government submits that, even if the Court does not find *Bryant* controlling here, the Court should nonetheless

apply the modified categorical approach because the 1994 version of the statute under which Nero was convicted is substantively the same as the current version of the statute on which the holding in *Bryant* was based. *See also Apprendi v. New Jersey*, 530 U.S. 466 (2000) (requiring a jury to agree on any circumstance increasing a statutory penalty).

Nero, on the other hand, submits that *Bryant* was not the law when he was convicted in 1994 and that the Court must apply "the law that applied at the time of that conviction." *McNeill*, 563 U.S. at 820. He argues, without explanation, that *Costner v. United States*, 139 F.2d 429 (4th Cir. 1943), which predates *Bryant* and *Apprendi*, represents the law at the time of his conviction and must control the question of divisibility of section 2114(a) in his case. In *Costner*, the Fourth Circuit considered whether the postal robbery statute[1] supported the imposition of two separate penalties against the defendants. Each of the defendants was convicted and sentenced on two counts for a single offense under the postal robbery statute, one for assault with intent to rob and a second for jeopardizing the lives of the mail custodians by the use of a dangerous weapon during the robbery. *See id.* at 430. The court saw no distinction in the statute between "intent to rob" and completion of the act, finding the two to be "upon the same footing so far as punishment is concerned." The court further held that the statute sets forth differing degrees of punishment not for separate offenses (i.e., attempt and completion of robbery) but for differing levels of aggravation (i.e., simple robbery and assault with intent to rob). *Id.* at 431.

The Court agrees with the Government that *Bryant* controls the outcome here, regardless of the fact that Nero was convicted prior to the 1994 statutory amendments, since those amendments did not substantively change the language of the statute. Nero misapplies the holding

---

[1] The statute considered in *Costner*, 18 U.S.C. § 320 (1943), was a precursor to 18 U.S.C. § 2114; the two statutes contained substantively identical language at the time of Nero's offense. *See Bryant*, 949 F.3d at 176–77 (noting that the statute considered in *Costner* was "essentially the same" as the current version of the law codified in section 2114).

of *Costner*, which involved a different question than that posed here. That case involved a "double-jeopardy challenge[]," *Bryant*, 949 F.3d at 178 n.6, questioning whether the statutory language "manifest[ed] an intent [by Congress] to punish the putting of a life in jeopardy in the effectuation of a robbery of the mail as a separate crime distinct from the assault or the robbery which it comprehends," *Costner*, 139 F.2d at 430. In other words, *Costner* only answered whether an individual defendant may be charged under both the simple "robbery" and the "assault with intent to rob" parts of the statute for a single offense, a challenge that does not bear on the present question of whether a conviction under the latter part of the statute involves a criminal *element* separate from the first part. In fact, by referring to aggravated postal robbery under the statute as "the greater crime in the alternative," *Costner* appears to have foreshadowed the very conclusion in *Bryant*. 139 F.2d at 432. Moreover, the Supreme Court has explicitly recognized that "[i]f statutory alternatives carry different punishments, then . . . they must be elements," rather than means to accomplish the same crime, which clearly indicates that the statute is divisible and that the modified categorical approach should be applied. *Mathis*, 136 S. Ct. at 2256. That is precisely the situation in section 2114(a), which prescribes different punishments for the two statutory alternatives.

As such, the Court will apply the holding in *Bryant* that "the aggravated offense contained in § 2114(a), which requires that the defendant wound or put the victim's life in jeopardy by use of a dangerous weapon during the commission of the basic offense, is categorically a crime of violence under the force clause of § 924(c)(3)(A)." 949 F.3d at 182. This is equally true of the law at the time of Nero's conviction, which, as indicated, is in relevant part identical to the law today. The Court is aware of no pre-1994 controlling or persuasive case law holding otherwise.

The Court, then, concludes that the predicate offense to Nero's section 924(c) conviction—i.e., postal robbery during which a victim's life was threatened by use of a dangerous weapon—qualified as a crime of violence under the force clause of section 924(c). His conviction therefore remains valid.

## V.

The Court **DENIES** Nero's motion to vacate his conviction under section 924(c). A separate order will issue.

July 28, 2021

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE